QUESTIONS: 1. May a one-doctor practice be designated by use of the word "clinic"? 2. Does the use of designations such as "Overweight Medical Clinic," "Acupuncture Clinic," and variations thereof violate Rule 21R-3.08, Florida Administrative Code, which designates specific areas of specialty practice? 3. Must an applicant for licensure by endorsement under s. 459.11, F.S., serve an internship? 4. Must the board require a license in another state as a prerequisite to licensure by endorsement under s. 459.11(1)(b), F.S.? 5. Must the hospital in which an applicant serves his internship be approved by the board and by the American Osteopathic Association?
SUMMARY: A one-doctor osteopathic practice may be designated by use of the word clinic when the "clinic" in question has all the facilities which would qualify it as a hosptial, but for its lack of in-patient facilities. The use of designations such as "Overweight Medical Clinic," "Acupuncture Clinic," and variations thereof by osteopathic physicians is not authorized under Rule 21R- 3.08, Florida Administrative Code. An applicant for licensure as an osteopathic physician by endorsement need not serve an internship, as otherwise required, but is required to be licensed in another state with standards equal to the standards set by the Board of Osteopathic Medical Examiners as a prerequisite to licensure by endorsement. An osteopathic physician is required to serve a one-year internship, in a hospital approved by the state board and by the American Osteopathic Association in order to qualify for the state examination and to be eligible for licensure upon passing said examination. AS TO QUESTION 1: While the term "clinic" has never been defined by statute in Florida nor construed by the Florida courts, the law in other jurisdictions, which is persuasive in Florida, is clear on what constitutes a "clinic." The distinguishing characteristic between a clinic and a hospital is that a clinic does not provide beds for its patients and serves an out-patient function. Meyers v. Aetna Life Ins. Co.,218 A.2d 851 (Pa. 1966); cf. New York Life Ins. Co. v. Ince,27 S.W.2d 476, 480 (Mo. Ct. of Appeals 1930). Since this is the only judicially declared distinction between a clinic and hospital, we can look to the general characteristics of a hospital relative to participation by physicians for an answer to your specific question. In the absence of a provision in an insurance policy requiring a hospital to have a "staff" of physicians, a facility wherein one physician made daily visits, supplemented at times by other physicians, was considered to be a "hospital." Prudential Ins. Co. v. Cline, 371 S.W.2d 158 (Tenn. Ct. of Appeals 1963). Thus, while in most instances a hospital will have a staff of more than one physician, this is not an essential characteristic of a hospital. The same will be true of clinics since "clinics" are distinguished from "hospitals" on the basis of in-patient facilities rather than physician services. Question 1 is therefore answered in the affirmative when the "clinic" in question has all the facilities which would qualify it as a hospital but for its lack of in-patient facilities. AS TO QUESTION 2: Rule 21R-3.08, Florida Administrative Code, provides that, "The use, advertisement, or holding out of any specialty not specifically enumerated in the above list shall constitute a violation of the code of ethics of the Florida State Board of Osteopathic Medical Examiners." Fifty such specialties are listed in this rule; however, "overweight medicine" and "acupuncture" are not among this list. It is a well-settled rule of statutory construction that the mention of one item implies the exclusion of another; expressio unius est exclusio alterius. See 30 Fla. Jur. s. 90. The specific listing of fifty specialties excludes any specialty designations not mentioned. Question 2 is therefore answered in the affirmative. AS TO QUESTIONS 3 AND 4: Licensure by endorsement is provided in s. 459.11, F.S., which sets forth specific requirements. The section applies to any osteopathic physician who is a graduate of a standard college of osteopathy and who has passed an examination for admission to the Army, Navy, or Public Health Services Medical Corps, or who is a graduate of a standard college of osteopathy and who has passed all parts of the examination conducted by the National Board of Examiners for Osteopathic Physicians and Surgeons. In either of these two cases, three further requirements are set forth in s. 459.11(1), F.S., which are that: (a) The applicant is of good moral character; (b) The requirements to practice in the state, territory, country or province in which the applicant is already licensed be equal to those of this state; (c) The applicant shall be required to pay the same fees as licentiates by examination. (Emphasis supplied.) There is no requirement for an internship in s. 459.11, F.S., as set forth above and, therefore, question 3 is answered in the negative. However, the statute specifically requires that as a condition for licensure by endorsement, the applicant be licensed in another state, and that the requirements of that state be equal to those in Florida, s. 459.11(1)(b), F.S. Question 4 is therefore answered in the affirmative. AS TO QUESTION 5: Section 459.06(5), F.S., sets forth one of the requirements for applicants for examination by the board. Graduates of a college of osteopathy must have served a "resident internship of not less than twelve months in a hospital in Florida approved for this purpose by the State Board of Osteopathic Medical Examiners and the American Osteopathic Association." (Emphasis supplied.) However, s. 459.10, F.S., applies to the issuance of a license to an applicant who has already passed the examination and provides that one who passes the exam and "completes one year internship in an osteopathic hospital approved by said board shall be entitled to a license." These two provisions apply to two different circumstances in the licensure procedure. For purposes of the application to take an exam, s. 459.06, supra, requires an internship which has been completed in a hospital approved by the board and the association; for purposes of issuance of the license after successful completion of the exam, s. 459.10, supra, provides that a one-year internship must have been served in a hospital approved only by the board. In my opinion, these two provisions do not directly conflict since they deal with two different situations. However, the practical effect of s. 459.06(5), supra, is that only those applicants who have served an internship at a hospital approved by both the board and the association may take the exam and therefore be considered in any way eligible for licensure under s. 459.10, F.S. Question 5 is therefore answered in the affirmative.